UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

MATTHEW FOSTER,

                              Plaintiff

   -against-

UNITED PARCEL SERVICE OF AMERICA, INC., UPS FREIGHT, INC., and TFORCE FREIGHT, INC.,

                              Defendant.

———————————————————————

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/2023

Case No. 18-cv-1706 (NSR) (AEK)

Consolidated with:
18-cv-10294 (NSR) (AEK)
19-cv-6501 (NSR) (AEK)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Matthew J. Foster ("Plaintiff" or "Foster") commenced four separate actions, which were consolidated with the instant lead case, 18 Civ. 1706 (*see* ECF No. 105), asserting multiple claims sounding in, *inter alia*, disability-based employment discrimination and retaliation against UPS Freight, Inc. ("UPS Freight"), TFI International Company d/b/a T Force Freight, Inc. ("TForce Freight"), and United Parcel Service of America, Inc.'s ("UPS America") (together, "Defendants"). On May 27, 2022, Plaintiff filed a Second Amended Complaint for the consolidated actions. (*See* ECF No. 113, the "CSAC").

    Before the Court is Defendant UPS America's partial motion to dismiss causes of action five through sixteen of the Consolidated Second Amended Complaint, as against UPS America. For the reasons discussed below, the Court DENIES UPS America's motion to dismiss.

## BACKGROUND

### I.    Factual Background

    The following facts are taken from Plaintiff's CSAC and are construed in the light most favorable to Plaintiffs, the non-movant, and accepted as true for purposes of the motions.

Plaintiff, a resident of Dutchess County, NY, suffers from a disability as a result of having experienced a Traumatic Brain Injury in 1985. (*Id*. ¶¶ 1, 17.) As a result of his disability, Plaintiff's short-term memory is affected, and he can be verbally repetitive, speaks quickly, and needs instructions confirmed or in writing. (*Id*. ¶ 41.)

Plaintiff was licensed and qualified to operate tractor trailers. (*Id*. ¶ 42.) Plaintiff received his commercial driver's license in 1997 in the State of New York. (*Id*. ¶ 43.) Plaintiff has recertified his commercial driver's license every other year, including February 2017 and May 2019. (*Id*.)

Plaintiff alleges that UPS America hired Plaintiff as a "City" tractor-trailer driver on March 5, 2015 for work to be performed under UPS Ground Freight. (*Id*. ¶ 44.) Defendant UPS Freight is a wholly owned subsidiary of UPS America. (*Id*. ¶ 2.) Plaintiff also alleges that Defendant UPS America provided Plaintiff with benefits, medical insurance and retirement benefits as part of his employment. (*Id*.)

In April 2017 Plaintiff was locked out of work and directed to obtain medical testing, and was not reinstated until July 2017. (*Id*. ¶ 45.) Plaintiff provided the medical documentation and was finally reinstated at the end of July. (*Id*.) His request for certain accommodation was denied in September, approximately seven months after having made his initial request. (*Id*. ¶ 46.)

Plaintiff claims that UPS America terminated his employment on November 14, 2017 for purported "dishonesty" for failing to report an accident, though Plaintiff argues that the accident was insignificant and was reported to a guard present. (*Id*. ¶ 47.) Plaintiff filed a grievance in connection with his termination. (*Id*.) Plaintiff also alleges that on November 14, 2017, Plaintiff's manager demanded that he obtain a medical note stating that he could perform all duties and

responsibilities of his job without any accommodation in order to return to employment.  (*Id*. ¶ 67.)  Plaintiff was placed off payroll and was not paid accrued time.  (*Id*. ¶ 68.)

In April 2018, Plaintiff was reinstated by UPS America, though demoted to "Road" driver.  UPS America determined that Plaintiff could not be accommodated in the "City Driver" position.  As a result, Plaintiff lost seniority and overtime opportunities.  (*Id*. ¶ 48.)  Plaintiff alleges that he was wrongfully terminated again on July 7, 2018.  (*Id*. ¶ 49.)

On December 13, 2019, Plaintiff was supposed to be re-instated following a grievance arbitration decision.  (*Id*. ¶ 50.)  Plaintiff expected to be restored to his position as a Road Driver after being provided an interim opportunity assuming the job of Dock Worker.  (*Id*.)  Plaintiff alleges that on April 9, 2020, he was informed by UPS America that he could not be accommodated as a Dock Worker and that there was no schedule to retrain him as a driver.  (*Id*. ¶ 51.)  Plaintiff had quit his former job following the decision, and was therefore left unemployed.  (*Id*. ¶ 50.).  Plaintiff alleges that he was finally able to return to work on September 14, 2020 as a Road Driver.  (*Id*. ¶ 52.)

Separately, Plaintiff alleges that UPS America maintained that Plaintiff had not been terminated, and instead, stated that Plaintiff could return to work once he was able to medically demonstrate his ability to work without restrictions and with no accommodations.  (*Id*. ¶¶ 69–70.)  Defendant UPS America also purportedly misrepresented to Plaintiff that he still had insurance, resulting in Plaintiff's spouse obtaining expensive testing.  (*Id*. ¶ 73.)  In addition, as a result of Plaintiff's loss of benefits, he and his family were unable to access medical treatment and benefits.  (*Id*. ¶ 75.)  Plaintiff alleges that at the time his benefits were discontinued, Plaintiff's son was receiving mental health treatment, including for suicidal tendencies, and was unable to obtain

residential treatment under Medicaid. (*Id.*) On November 9, 2019. Plaintiff's son committed suicide. (*Id.*)

In or about January 2021, TForce purchased UPS America operations known as UPS Ground Freight. (*Id.* ¶ 12.) Upon information and belief, TForce purchased, all operations, physical plant and retained all employees. (*Id.*) Plaintiff's compensation continued to be routed through UPS America and TForce continued all UPS Human Resources access points. (*Id.*)

### A. Allegations of Single Employer Relationship

Plaintiff alleges that though he worked under UPS Freight, UPS America was his actual employer. Plaintiff alleges that UPS Freight and UPS America have "integrated operations, common management and centralized control of labor relations." (*Id.* ¶¶ 17, 44.) Plaintiff points to the following facts: documents relating to Plaintiff's employment and suspension were on UPS letterhead (*id.* ¶ 18.); individuals who are related to the claims, including Plaintiff's managers and the Human Resources Safety Manger, have UPS email addresses "ups.com" which links to the website of UPS (*id.* ¶¶ 19–20); insurance documents relating to Plaintiff's disability leave and accommodation reflects UPS as the client and correspondence from Defendants contains the UPS logo (*id.* ¶ 21); and Defendants referred Plaintiff to "UPSers.com", an employee web portal owned by UPS (*id.* ¶ 22.)

In addition, Plaintiff alleges that several employment related items are on UPS letterhead, including his job description, accommodation checklist, request for medical information form. (*Id.* ¶¶ 23–25.) Plaintiff's benefits were provided by an insurance company (Aetna) on joint letterhead with UPS. (*Id.* ¶ 26.) In addition, Plaintiff's Employee ID and computer records related to his ADA request is maintained on the UPS human resources hrsc.ups.com records system. (*Id.* ¶ 27.) All of Plaintiff's "Chronological Claim Notes" maintained by Aetna indicate the "Client" as UPS.

4

(*Id*. ¶ 28.)  In addition, Plaintiff's work location is not referred to as "Ground Freight Inc." but is instead refer to as the "Newburgh NY Service Center". (*Id*. ¶ 29.)   Lastly, hiring for Plaintiff's job as a City Driver was through UPS and the UPS.com website.  (*Id*. ¶ 31.)

## II.     Procedural Background

On January 10, 2018 Plaintiff filed an action in the Supreme Court of the State of New York, County of Orange, Index Number EF000363-2018, against both UPS Freight and UPS America, which was removed by Defendant UPS Freight to federal court on the basis of diversity jurisdiction on February 23, 2018.  (ECF No. 1.)  Prior to the consolidation of Plaintiff's cases, that case was referred to *Foster I*.

On November 6, 2018 Plaintiff filed a Complaint against UPS America alleging federal Americans with Disabilities Act ("ADA") claims (hereinafter *Foster II*, Index No. 7:18-cv-10294) based upon the same acts claimed in *Foster 1* following the receipt of an EEOC Right to Sue Letter on August 27, 2018.  (CSAC ¶ 8.)  On November 6, 2018 Plaintiff filed a second action against UPS America in New York State Supreme Court, Index No. EF011070-2018 (hereinafter *Foster III,* Index No. 7:18-cv-10925) alleging claims based upon facts that occurred subsequent to the filing of *Foster I and II*. (*Id*. ¶ 9.)  On July 15, 2019 Plaintiff filed a another lawsuit (*Foster IV*, 7:19-cv-6501) against UPS America based upon Plaintiff's federal Americans with Disabilities Act claims arising from the facts that arose after the filing of *Foster III*.  (*Id*. ¶ 10.)

On September 4, 2020, Magistrate Judge Lisa Margaret Smith issued a Report and Recommendation (the "R&R") that denied in part and granted part Defendants' motion to dismiss *Foster I* through *IV*. (*See* ECF No. 78.)  The Court adopted the R&R in its entirety in an Amended Decision and Order, dated March 4, 2022.  (*See* ECF No. 105, at 2.)

The Court, in adopting the R&R, allowed Plaintiff to replead in one consolidated complaint *Foster I*, *II*, and *IV*, giving Plaintiff the opportunity to replead UPS America's single employer liability[1] as to the federal Americans with Disabilities Act claims raised in *Foster II* and *IV*. (*Id*. at 3.)

On May 27, 2022, Plaintiff filed the CSAC in the now consolidated action. (ECF No. 113.) The Court granted Defendant UPS America leave to file a motion to dismiss the claims raised against it in the CSAC on the basis that Plaintiff failed to allege single employer liability against it. (ECF No. 119.) UPS America's motion to dismiss was fully briefed as of October 5, 2022 (ECF No. 129.)

## LEGAL STANDARD

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting

---

[1]  "A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise, and "a parent company is considered an employer of its subsidiary's employees only when the parent and subsidiary represent a single, integrated enterprise." (*See* R&R at 16 (citing *Han v. Kuni's Corp.*, No. 19-CV-6265 (RA), 2020 WL 2614726, at *7 (S.D.N.Y. May 22, 2020)).

*Twombly*, 550 U.S. at 555).  The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555.  A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The CSAC alleges Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101, et seq.) and New York State Human Rights Law ("NYSHRL") (N.Y. Exec. Law § 296, et seq.) discrimination and retaliation claims against Defendant UPS America.  (*See* CSAC ¶¶ 137–196.) The parties agree that Plaintiff's ADA and NYSHRL claims against UPS America hinge on the issue of whether UPS America can be considered Plaintiff's employer.  *See Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 608 (S.D.N.Y. 2016), *aff'd in part, rev'd in part on other grounds*, 852 F.3d 195 (2d Cir. 2017) ("An employer-employee relationship is a required element of an employment discrimination claim under the ADA . . . or the NYSHR").

The instant motion to dismiss argues that the Court should dismiss Plaintiff's claims against Defendant UPS America because (i) the parties already stipulated that UPS America was not Plaintiff's employer and (ii) the CSAC fails to allege that UPS America was Plaintiff's employer under the single employer liability doctrine such that it should be liable for the claims raised therein.  (*See* ECF No. 130, Def.'s Mem. at 130.)

### I.     Joint Stipulation filed on April 5, 2018

The docket shows that on April 5, 2018, the parties entered into a stipulation dismissing UPS America from *Foster I* with prejudice and stipulating that for the purposes of *Foster I*, UPS Freight is Plaintiff's employer and not UPS America.  (*See* ECF No. 14, the "Stipulation".)

7

Plaintiff argues that this stipulation was entered into before the cases were consolidated on March 4, 2022 and therefore does not apply to the instant action. (ECF No. 131, Plaintiff's Opp. ¶ 18.)

Defendant UPS America insists that the Stipulation should be dispositive of the single employer issue, and that because the Stipulation was filed under the instant docket number (C.A. No.18-cv-1706), the Stipulation still stands and therefore applies. (ECF No. 133, Def.'s Reply at 2.)

The Court finds that the Stipulation does not bar Plaintiff from attempting to plead single employer liability as to UPS America. In fact, Judge Smith's R&R, which was adopted in full by the Court (*see* ECF No. 105), granted Plaintiff leave to file amended pleadings in order to assert single employer liability against UPS America with respect to the allegations in *Foster II* and *Foster IV*, both of which raise ADA allegations as against UPS America. (*See* R&R at 2 ("Plaintiff should be allowed an opportunity to re-plead UPSA's single employer liability on his claims in Foster II and Foster IV."); *see also* ECF No. 105 at 3 (adopting R&R) ("That portion of the motion(s) seeking to dismiss Foster II and IV for naming the wrong defendant/employer is granted without prejudice to Plaintiff's right to re-plead UPS America's single employer liability in Foster II and IV within 60 days of this order").

Therefore, the Court rejects UPS America's argument that the Stipulation is dispositive as to the single employer issue. The Court will now evaluate whether Plaintiff sufficiently alleges single employer liability against UPS America.

> II. **Whether UPS America can be considered Plaintiff's employer under single employer liability theory**
>
> A. **Legal Standard of Single Employer Liability**

"In the employment discrimination context . . . there is a strong presumption that a parent is not the employer of its subsidiary's employees." *Han v. Kuni's Corp.*, No. 19- CV-6265 (RA),

2020 WL 2614726, at *7 (S.D.N.Y. May 22, 2020) (internal quotation marks, brackets, and citation omitted). "[T]o prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an integrated enterprise with the employer, thus making one liable for the illegal acts of the other." *Id*. (internal quotation marks, brackets, and citations omitted). "A single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise," *id*. (internal quotation marks and citation omitted), and "a parent company is considered an employer of its subsidiary's employees only when the parent and subsidiary represent a single, integrated enterprise." *Id*. (internal quotation marks and citation omitted).

Here, the parties agree that the legal test for single employer liability applies in assessing whether UPS can be considered Plaintiff's employer for purposes of Plaintiff's ADA and NYSHRL discrimination and retaliation claims raised in the CSAC. The single employer liability test is as follows: "Plaintiff must assert factual allegations supporting four factors to hold multiple entities jointly liable for unlawful employment-related conduct: '(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.'" *White v. Best Cheese Corp*., Case No. 17 CV 4487 (NSR), 2018 WL 4684163, at *4 (S.D.N.Y. Sept. 27, 2018) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). "Though no factor is determinative, the second, 'centralized control of labor relations', is the most significant." *Id*. (citation omitted). "The Second Circuit has also recognized that the third and fourth factors—common management and common ownership—are, in particular, ordinary aspects of the parent-subsidiary relationship, which often may be of limited use in determining whether to treat two or more corporate affiliates as a single employer." *Han*, 2020 WL 2614726, at *8 (internal quotation marks, brackets, and citation omitted). "The critical question is what entity

9

made the final decisions regarding employment matters related to the plaintiff? In addition, the Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation . . . ." *White*, 2018 WL 4684163, at *4 (internal quotation marks and citations omitted).

In the context of a motion to dismiss, a plaintiff "need only allege facts sufficient to put the defendant on notice of the theory of employer liability upon which [his or] her claims are based." *Id*. (internal quotation marks, brackets, and citations omitted); *see also Han*, 2020 WL 2614726, at *8 ("And although the determination of whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact, where a plaintiff's allegations are so inadequate that they fail to put a defendant on notice of the theory of employer liability, dismissal is appropriate.") (internal quotation marks, alterations, and citation omitted).

### B. Application of Single Employer Liability Factors

For the reasons articulated below, the Court finds that Plaintiff has adequately pled a single employer relation such that his claims against UPS America survive the instant motion to dismiss.

Regarding common management, the Court agrees with Plaintiff that the CSAC failed to raise any allegations regarding common management of UPS America and UPS Freight. (Reply at 6.) For instance, there are no allegations that directors and officers hold positions in both to show common management. *See Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304, 312 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) ("As a general matter, the Court must consider evidence of common management "in the light of the well established principle that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership."). Therefore, this factor leans

against a finding of single employer relationship, though as noted above, common management is one of the less important factors in the single employer liability analysis.

Regarding common ownership or financial control, it is undisputed that UPS Freight is wholly owned by UPS America, and therefore, "there exists at least some common ownership between the two entities." (*See* ¶ CSAC 2.) *See Han*, 2020 WL 2614726, at *12. While this factor leans in favor of indicating a single employer relationship, the existence of apparent-subsidiary relationship is insufficient on its own to find that the two entities are a single employer. *See id*. at *12'; *see also Schade v. Coty, Inc*., No. 00 Civ. 1568 (JGK), 2001 WL 709258, at *10 (S.D.N.Y. June 25, 2001) ("[I]n the absence of any meaningful participation by [the parent] in [the subsidiary's] employment and labor decisions, [the parent's] ownership status with respect to [the subsidiary] is insufficient to consider the entities an integrated single employer."). Plaintiff fails to provide any other allegations in the CSAC regarding common ownership or financial control.

With respect to interrelation of operations, Plaintiff alleges the following: that select management and human resources employees had "ups.com" e-mail addresses (CSAC ¶¶ 19-20); he applied to work through UPS.com (*id*. ¶ 31); certain employment-related documents appeared on UPS letterhead (*id*. ¶¶ 18, 21, 23-26, 28); some of Plaintiff's employment and accommodation request records were maintained on a "UPS human resources hrsc.ups.com records system" (*id*. ¶ 27); and UPS Defendants referred Plaintiff to a UPSers.com web portal (*id*. ¶ 22).

Regarding common websites and email addresses, some Courts have found that "it is not uncommon for two or more businesses that are run independently and manage their labor relations independently to use a single website or a common name for marketing purposes. That does not make each responsible for the labor law violations of the other." *Weiss v. Starr Rest. Org., LP*, No. 20-CV-8090 (JMF), 2021 WL 3099895, at *5 (S.D.N.Y. July 21, 2021) (citing *Huer Huang*

11

*v. Shanghai City Corp.,* 459 F. Supp. 3d 580, 587 (S.D.N.Y. 2020) (internal quotation marks omitted) (collecting cases); *see also Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 792–93 (S.D.N.Y. 2021) ("Such features (e.g., overlapping email systems and personnel) are familiar if not routine in the context of a parent-subsidiary corporate relationship. But such, as the case law reflects, does not inherently bespeak a single employer arrangement."). On the other hand, other courts have found that joint or common websites indeed suggests interrelation of operations. *See, e.g., White*, 2018 WL 4684163, at *5 ("With respect to interrelation of operations, the Uniekaas and Best Cheese websites link to one another, and both websites demonstrate that Best Cheese is the exclusive importer of Uniekaas cheeses.") (citing *Wexelberg v. Project Brokers*, No. 12-CV-7904 (LAK) (MHD), 2014 WL 2624761, at *7 (S.D.N.Y. Apr. 28, 2014) (finding interrelation of operations where U.K. parent and American subsidiary's websites mentioned and linked to one another and the U.K. parent's "Contact Us" page listed the American subsidiary).

With respect to the fact that UPS Freight and UPS America use the same letterhead, some Courts have found that shared letterheads and logos may indicate interrelated operations, while other courts have come to a different conclusion. *See Nat'l Lab. Rels. Bd. v. Newark Elec. Corp.*, 14 F.4th 152, 165 (2d Cir. 2021) (finding single employer relationship where, *inter alia,* logos were both displayed on the shared office, stationery, employee timesheets, and job cards); *but see Ennis v. TYCO Int'l Ltd.*, No. 02 CIV.9070(TPG), 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004) ("business cards and the Sonitrol letterhead indicat[ing] that Sonitrol was a Tyco company . . . do not demonstrate a significant level of interrelation among Tyco, Sonitrol, and Mid-Atlantic.").

The Court therefore finds that while Plaintiff's allegations regarding interrelated operations appears to point towards suggesting a single employer relation, it is not entirely dispositive.

The last factor, centralized control of labor relations, is the most important factor. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 227 (2d Cir. 2014); *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 790, 793 (S.D.N.Y. 2021); *Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304, 311 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999). Plaintiff need not demonstrate UPS America's total control or ultimate authority over UPS Freight's hiring decisions, but rather, "control over labor relations may be established by a showing . . . of participation [that] is sufficient and necessary to the total employment process. The critical question is 'what entity made the final decisions regarding employment matters related to the plaintiff?'" *Brown*, 756 F.3d at 227 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995)). "In addition, 'the Court must focus its inquiry on the parent's actual involvement in the particular circumstances giving rise to the litigation . . . .'" *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 309 (S.D.N.Y. 2013) (quoting *Herman*, 18 F. Supp. 2d at 311).

In order to determine whether two separate entities maintain centralized control over labor relations, courts look at the following factors:

> whether the companies have separate human resources departments and whether the entity establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees. Other relevant factors include whether employment applications are sent to the other entity, whether the other entity must clear all major employment decisions, and whether the entities shift employees back and forth.

*Ferrara v. Oakfield Leasing Inc.*, 904 F. Supp. 2d 249, 263 (E.D.N.Y. 2012) (citing *Finkel v. Frattarelli Bros., Inc.*, No. 05 Civ. 1551, 2008 WL 2483291, at *11 (E.D.N.Y. June 17, 2008) (internal quotation marks, alterations and citations omitted).

Plaintiff makes the following allegations to show that UPS America controlled labor relations at UPS Freight: that (i) "UPS America controlled Plaintiff's request for reasonable accommodation which were implemented on the local level through both UPS America and at the

13

UPS Ground Freight terminal" (CSAC ¶ 34); and that (ii) "Plaintiff would complain to local UPS Ground Freight terminal management as well as UPS America Human Resources personnel who would communicate back to the terminal as to decisions and/or action to be taken." (*Id*. ¶ 35.) The first allegation is conclusory. *See Musiello,* 518 F. Supp. 3d at 790–91 (S.D.N.Y. 2021) (finding conclusory the allegation that "[a]t all relevant times, Defendant CBS Corporation had immediate control over its subsidiary, CBS Radio Inc.'s employees; had commonality of hiring, firing, discipline, pay, insurance records and supervision . . . ") (internal citation omitted). The second allegation, however, is not entirely conclusory and may be sufficient to suggest that UPS America exercised some control over employment decisions. This is compounded by the fact that the CSAC also makes other allegations indicating UPS America's involvement in human resources, including allegations that certain employment and suspension documents were on "UPS" letterhead (CSAC ¶ 18), that Plaintiff's employee ID and computer records relating to his ADA request were maintained on a UPS human resources records system (*id*. ¶ 27), and that hiring for Plaintiff's job as City Driver" was through the UPS.com website (*id*. ¶ 31.)

Plaintiff also makes the following allegations in the CSAS indicating that UPS America made direct labor related decisions: (i) that "Defendant UPS America hired Plaintiff as a 'City' tractor-trailer driver on March 5, 2015 for work to be performed under UPS Ground Freight. Defendant UPS America provided Plaintiff with benefits, medical insurance and retirement benefits as part of his employment" (CSAC ¶ 44); (ii) that "Plaintiff's first termination from employment by UPS America occurred on November 14, 2017 for purported "dishonesty" in failing to report an accident . . ." (*id*. ¶ 47); (iii) that "in April 2018, Plaintiff was reinstated by UPS America, though demoted to "Road" driver . . ." (*id*. ¶ 48); (iv) that "Plaintiff' was wrongfully terminated again by UPS America on July 7, 2018" (*id*. ¶ 49); (v) that "[o]n December 13, 2019

14

Plaintiff was re-instated by Grievance Arbitration decision though UPS America failed to reinstate . . . (*id*. ¶ 50); (vi) that around April 9, 2020 "Defendant UPS America stated Plaintiff could not be accommodated as a Dock Worker and had no schedule to retrain him as a Driver" (*id*. ¶ 51); and (v) "Plaintiff would finally be returned to work by UPS America as of September 14, 2020 as a Road Driver" (*id*. ¶ 52.)

In light of the aforementioned allegations, the Court finds that the "labor relations" factor leans in favor of finding a single employer relationship. *See Bautista v. PR Gramercy Square Condo*., No. 21-CV-11093 (ER), 2022 WL 17156628, at *5 (S.D.N.Y. Nov. 22, 2022) ("In *Cook*, the Second Circuit found a single employer relationship where "the parent processed applications for employment for the subsidiary and approved personnel status reports; the subsidiary cleared all major employment decisions with the parent; and the plaintiff was hired and fired by employees of the parent.") (quoting *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 227 (2d Cir. 2014) (citing *Cook v. Arrowsmith Shelburne, Inc*., 69 F.3d 1235, 1241 (2d Cir. 1995)).

In its opening brief, UPS America argues that Plaintiff merely makes "group pleading" allegations when attempting to show joint labor relations between UPS America and UPS Freight (*see* Def.'s Mem. at 11–12), but the Court disagrees, given that Plaintiff specifically makes the allegations against UPS America. Whether those allegations are true or whether Plaintiff tactfully points to "UPS America" instead of "UPS Freight," is not a question to be answered at the motion to dismiss stage, as the Court is obligated to construe the allegations in Plaintiff's favor and take them as true for purposes of a motion to dismiss.

Taking the single employer factors together, the Court finds that the determination of whether UPS America and UPS Freight operate as a single employer is a close call. The Court will err on the side of caution and find that Plaintiff sufficiently alleges single employer liability

as against UPS America, particularly "in light of the Second Circuit's caution that whether an entity is a covered employer . . . is generally . . . a fact-based question." *Ruiz v. New Avon LLC*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *14 (S.D.N.Y. Sept. 22, 2019) (citing *Popat v. Levy*, 253 F. Supp. 3d 527, 540 (W.D.N.Y. 2017). Plaintiff has raised facts "sufficient to put [the defendant] on notice of the theory of employer liability upon which her claims are based." *White*, 2018 WL 4684163, at *4 (citing *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 523 (S.D.N.Y. 2017)).[2]

## CONCLUSION

Based on the foregoing, the Court DENIES Defendant UPS America's motion to dismiss. The Court's review of the docket indicates that the parties are engaging in discovery before Magistrate Judge Andrew Krause. The parties are directed to inform the Court within five business days of discovery closing regarding whether they intend on filing any summary judgment motions.

The Clerk of the Court is directed to terminate the motion at ECF No. 129.

Dated: July 14, 2023
White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

---

[2] The Court need not consider the new facts raised in Plaintiff's oppositions and the exhibits he attaches that are not mentioned or appended to the CSAC. As indicated in the R&R and as Plaintiff should well know by now, Plaintiff cannot seek to amend its complaint through allegations made in its opposition. *See* R&R 17–18; *see also Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 301 (S.D.N.Y. 2022) ("It is axiomatic that the [CSAC] cannot be amended by the briefs in opposition to a motion to dismiss.") (internal quotation and citation omitted). Nor does Plaintiff explain whether the exhibits attached can be considered as incorporated by reference to the CSAC. *See Orellana v. Real Innovative Constr., LLC*, No. 18CIV8396VECRWL, 2020 WL 13469284, at *4 (S.D.N.Y. Feb. 6, 2020) ("neither Plaintiffs' opposition brief nor counsel's declaration references any legal authority granting this Court the authority to consider these materials at this juncture. This failure alone provides a basis on which to deny consideration of these documents.") (citing cases); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.") (internal quotation and citation omitted.).